Good morning, Your Honors, and may it please the Court. My name is David Clark, and I represent the plaintiffs in the underlying action, Jose and Amelia Stanley. Carr-Gottstein is building the largest subdivision in Anchorage, 600 acres in phases. Six hundred acres is equivalent to 26 million square feet, approximately. The property at issue in this case is 180 square feet, one seven-thousandth of one percent of the total land area that Carr-Gottstein is developing. Although the plot at issue is one of the latter phases of this development, the discovery height should not be isolated from the whole. A whole 600 acres is a thriving community with roads, sewers, and like, connecting with other roads, sewers in the community. In the very beginning... Counsel, would you help me on a detail of this? Yes. It's on my mind. There was a stipulation for a period of time between Carr-Gottstein and the city... That is correct. ...to provide access to the lot at issue. That is correct. And then the stipulation was rescinded. What I want to know is, during the time that the stipulation was in effect, did the Stanleys materially change their position in justifiable reliance on it? Did they do any action or forbearance of action in reliance on that stipulation that the record shows? The answer to that is yes. And what was... Before that stipulation was entered into, and not only was it a stipulation, but it was a court order. The court ordered the stipulation in the Superior Court before it was transferred to the District Court. Before that stipulation was entered into, the Stanleys and the municipality had made an agreement that the municipality would not record the plot unless they gave the Stanleys fair notice of the recording of the plot to allow the Stanleys an opportunity to enjoin the recording of the plot. That agreement was subsumed in this stipulation. And the parties argued in their briefs when the Stanleys tried to intervene that the Stanleys really weren't injured by the fact that the municipality had breached this agreement with the Stanleys because they had this stipulation in which to protect their rights. Although they had their rights protected in their earlier agreement, now they had this second stipulation to protect their rights. So the answer is yes, the Stanleys had relied on it because they had not filed suit against the municipality earlier to protect their rights before the... So the reliance was forbearance from filing suit. That is correct. And that's all. Well, they also assented to the stipulation. The Stanleys wrote, after they learned of the stipulation, it was kept secret from them for a period of time. After they learned that the plot had been recorded in contravention of their earlier agreement with the municipality and that the stipulation existed, the Stanleys wrote to the municipality and asked them to exercise their rights under the stipulation so that the Stanleys' interests would be protected. So they assented to that agreement. There's two ways in which a party can, in essence, rely. One is by assent and the other is by actual reliance. And both were met in this case. This Discovery Heights process, from the very beginning of the process, the municipality required access... Back up for me for just a second. Lot 2 is not part of the Carr-Gottsen subdivision. And I understand that in order to plot a subdivision in Alaska, the subdivider has to show on the plot access for every lot within the subdivision. What Alaska law do you have that requires the subdivider to provide access to properties outside the subdivision? I think in my brief I quoted several municipal regs that required a subdivider to give due credence to other land uses, to not, in essence, put a spite strip up to... I don't have it right in front of me, but there's three or four particular ordinances that related to the issue of whether or not you had to provide access to other subdivisions when you're building your subdivision. And the fact of the matter is, is that the Plotting and Zoning Commission required, as a requirement, required Carr-Gottsen to provide legal access to Lot 2 as part of the plotting and zoning process. And this process had been from the very beginning. There's five or six phases that were being developed by Carr-Gottsen. Carr-Gottsen developed all phases, but this last phase, with the understanding that legal access would be provided to Lot 2. When it came time for crunch time, when Carr-Gottsen lost its bid, when the property, Lot 2, went to auction and the Stanleys outbid them, Carr-Gottsen, in essence, changed its position and built a... and did not provide access to Lot 2. Wasn't Lot 2 landlocked before Carr-Gottsen developed the subdivision or plotted the subdivision? Yes, and so was the rest of Carr-Gottsen's property. All of the lots that were subsequently plotted were landlocked as well. They did not have access. Access was created as part of this subdivision process. Roads and such were created and dedicated to the public as part of the subdivision process. The roads that Carr-Gottsen built in Discovery Hatch No. 3 were dedicated to the public. When Discovery Hatch No. 4 was built, those same roads that were built in Discovery Hatch No. 4 were allowed to connect as part of the subdivision process to public roads in Discovery Hatch No. 3. When the municipality required Carr-Gottsen to provide legal access to Lot 2, Carr-Gottsen's representative met the next day with the person in charge at the municipality, Jerry Weaver. In a private meeting, that condition was waived because the municipality concluded that the Stanleys who owned Lot 8, which had joined Lot 2, could provide access, legal access, through Lot 8. Carr-Gottsen concedes that legal access could not be provided through Lot 8 without having to go through an extenuating process which would require 100% of the lot owners in the subdivision to approve. Such an act would be simply futile on the Stanley's part to try to replant their property to gain legal access to Lot 2. So when Jerry Weaver was confronted with the fact that the Covenant's restrictions of record would not allow legal access to be provided, he required Carr-Gottsen to provide access and Carr-Gottsen then filed suit. As I said earlier, the municipality and the Stanleys made an agreement that the municipality would not allow the plot to be filed without providing fair notice to the Stanleys. The municipality of Anchorage acknowledges that they did not provide that fair notice and they also acknowledge in their pleadings that the reason, and the inference is that the reason they didn't provide that fair notice is that the stipulations subsumed that agreement. In regard to the issues raised in the taking, the courts are required to determine if an essential nexus exists between legitimate state interest and the condition extracted by the government. In this case, we have a 600-acre development. The condition extracted is one-seven-thousandth of the total landmass. It is requiring municipality and Carr-Gottsen to provide access. Do you see that issue now? I mean, in your brief you said that you were no longer, you said all you were pursuing now was damages. Well, I think in order to get the damages phased, you have to get through this, you have to get through the issue of whether or not it was a taking. My clients have acquired an easement to Lot 2. They purchased Lot 11 from a party who, milliseconds before my clients took title, recorded an easement granting them access to Lot 2. That did not, that did not, they purchased Lot 11 for full value and subsequently have resold Lot 11 for less value than they could have because of the easement. The issue of damages rests upon whether or not the municipality should have provided an easement to my clients through Lot 11 or Lot 10 as part of the original stipulation. And whether or not that, if the court finds that that was an unconstitutional, that requirement was an unconstitutional requirement, then my clients would not have a claim for damages. Let's see if I understand this. What the case is really about is damages at this point because the Stanley's bought Lot 11 for its value not burdened by an easement, caused it to be burdened by an easement to their Lot 2, and resold it for its value burdened by an easement. And the difference between those two prices is what they claim. Exactly right. Okay. So let me ask you another question. I realize you're out, but I just wanted to answer this before we finish. Do you think it was reasonable reliance to forbear from suit on the basis of the stipulation when it was clear that the conveyance of the public access easement to the municipality by Carr Gottstein was a conditioned precedent? That is, it would only happen if the municipality requested it and then they never requested it. So was it reasonable for you to rely on something that might never happen? I think there's two questions in there. I think that the Stanley's are a third-party, aside from the conditioned precedent, the Stanley's are a third-party beneficiary of that agreement. The question then is really, can the Stanley's standing by themselves enforce that conditioned precedent? And our belief is that, yes, the Stanley's can enforce that conditioned precedent. They can claim that they can, acting on behalf of the municipality, say, yes, we're going to require that that easement be purchased. I mean, you just put your finger on it. You have to step into the shoes of the municipality. And what the district court said was the shoes of the municipality is there's no stipulation. The stipulation was a court order. I mean, are you saying that the stipulation was vacated by the parties? They disavowed it? I'm saying, right, it was vacated. Wasn't that the basis of the district court's ruling? I think the basis of the district court's ruling, I mean, I don't know. The district court simply said that there was no shown reliance by the Stanley's on the stipulation. I don't know quite where it came up with the idea that there was no reliance. But I think there's two ways to show reliance. One is by assent. The Stanley's certainly assented before it was vacated. But the assent has to be at the request of one of the other two parties, that is the municipality or Kargatstein. And nobody requested that your client assent to the stipulation. In fact, they didn't even tell you about it. We found out about it. The stipulation was not vacated until the district court said it was vacated. It was a court order. I mean, the parties can say, well, we disavow it, Judge. But it was a court order, and it wasn't vacated until the district court judge said it was vacated. And that was after the Stanley's had intervened. And that was long after the Stanley's had found out about the stipulation. So, I mean, although it was a secret, the fact that the plot was recorded, and the fact that the stipulation was known by the Stanley's long before it was vacated by the district court judge. Okay. Thank you. Thank you. Good morning, Your Honors. I am William Cummings of Ashburn & Mason here on behalf of Appellee Kargatstein Properties. I will attempt to use approximately five minutes of my time and leave the remainder for Mr. O'Connell. The two initial points that are raised by Mr. Clark's argument are that in his discussion, he was saying that the municipality required Kargatstein to provide access. That was not an argument that was raised that was briefed on appeal. In fact, it was briefed below to the district court, and it was waived on appeal by not arguing it. In fact, what the municipality, the plotting board required, was that the issue of access be resolved with the department. And it was resolved by Kargatstein. It was resolved initially, as he discussed, by the plotting officer. And then later it was resolved by the municipality, determining that there was a substantial risk that this would be a taking, and therefore they didn't want to require access to be given. The other point is that in the proceedings below, the Stanleys did not argue that they had relied on the stipulation during the period of time that it was in effect, and made no argument to the district court, and therefore have waived the argument that they do make to this court by not preserving it in front of the district court. To the extent that argument is not waived, it is also not valid. In fact, prior to the stipulation, unknown to Kargatstein at the time, the Stanleys had received a promise from the municipality that the Stanleys would be told before any action was taken, before the plot was filed, is what the promise was. After the stipulation, the plot was going to be filed, but there was still no action, there were still two lots that could be used to provide access, lots 10 and 11, were still not capable of being sold by Kargatstein, were still subject to any court action that the Stanleys might wish to take. And in fact, that's why we're here today. The Stanleys, in fact, have received the opportunity to bring that court action and have taken advantage of it. The stipulation also does not provide what the Stanleys claim it provides. The stipulation provided a right for the municipality to request access. It did not require Kargatstein to provide access, absolutely. So the stipulation preserved the municipality's right as to the two lots over which access could be provided to require that access. It did not, and that if they required it, Kargatstein was going to give it, and they'd move on and they'd talk about damages. But the municipality did not say and never said that it wanted that access. What it was preserving was some further time to determine whether they, in fact, wanted to proceed with access or not. And in fact, within a very short period of time, approximately two months, they decided that they did not want to ask for access. The stipulation gave them two choices, and they chose the option. Let's see if I understand this. You're saying the municipality decided to back out of the stipulation, or rather not to exercise its possibility of making a request under the stipulation and to rescind it instead because it didn't want to risk exposure to an inverse condemnation claim by Kargatstein. Yes. Is that right? Yes, and the distinction between that they didn't have to back out of the stipulation. The stipulation preserved both options, either to proceed with access or not. The one thing that needed to be corrected from the stipulation was that the stipulation said that lots 10 and 11 would not be sold until that request was made. Now, why isn't it reliance that can turn the stipulation into a contract with the benefit to the Stanleys that they refrained from filing suit? First of all, it's not justifiable reliance on the stipulation because the stipulation didn't promise them access. But second of all, it's not reliance on any provision that requires access because there is no provision requiring access. At most, it's reliance on that part of the provision of the stipulation that say lots 10 and lots 11 will not be sold until a request is made. And in that part of the stipulation, the Stanleys were able to rely on that and did in fact get the relief they wanted, which is their opportunity to bring this suit before there were third parties involved, third party ownership of lot 10 or lot 11 was preserved. When the municipality and Kargatstein settled the dispute between them, one of the provisions that the municipality received was that Kargatstein would not sell lots 10 or lots 11 for a period of time. And in that period of time, the Stanleys were able to intervene and file a list pendants against the property, effectively preventing Kargatstein from selling it until the district court decided on summary judgment that they had no claim. If Your Honors have no questions, I'm going to leave the remainder of time to Mr. O'Connell. Judge O'Connell for the municipality. Judge Kleinfeld, I want to address myself to your question, if I may. And I have to respectfully disagree with Your Honor. If the court refers to Excerpt 33 at page 224, paragraph 2, that's the October 4th stipulation, Kargatstein Properties herein agrees to convey a 34-ply public access instrument to the municipality, to be located across either lot 11, lot 10, or both of said final plaque, for the benefit of BLM section lot 2 in a location identified by the municipality of that group, upon the written request by the municipality. That is a conditioned precedent, Your Honor. And it is recognized to be such in the reply brief. The right, and this is an important distinction. It is a critical distinction for the municipality. The protection, the harm not done actually is how I'm going to phrase this, to the Stanleys is that they were placed in no worse position by entry into the October 4th, 2001 stipulation than they were in before entry into that stipulation. The reason is this. The purpose of the stipulation, as the district court recognized, was to define the risks between Kargatstein in seeking to market its development and deal with changing market conditions. I don't think that their claim is that the stipulation put them in a worse position. I think the claim is that they relied on the stipulation was for their benefit, because it says for the benefit of BLM section lot 2, and that they relied on it, refrained from filing suit. I guess their suit would have been to compel the municipality to make a request, among other things. If I may, Your Honor, there are three points Your Honor has raised, and I'd like to address them. First, as to the benefit language, that benefit language is easement language. There's a dominant language in the dominant estate and the servient estate, is burdened with something that is done for the benefit of the dominant estate. That's the context in which benefit is used. It is not dispositive language in this agreement. But second, it is actually the Stanley's position that the October 4th, 2001 stipulation conferred upon them greater rights than they had prior to it. And that is not the case. The municipality did no harm to the Stanleys, and I emphasize this point and use that language specifically, because they still retained the ability to do what they had the opportunity to do before, bring suit and seek injunctive relief. There is not a material change in the Stanley's opportunities, because the dispute had been defined to lots 10 and 11, the adjoining parcels, but lots 10 and 11 were still not subject to sale under the stipulation, and the Stanleys not only had their opportunity to seek to intervene in the pending litigation before lots 10 and 11 were sold, but they had the opportunity to seek injunctive relief, and they chose not to do that. The distinction is between what protection, if any, was conferred upon them. And the protection that was conferred upon them was limited to the ability to bring suit. The municipality always retained the option whether or not to exercise its right to require Carr-Godstein to provide access. I must respectfully dispute with Your Honor's phraseology, back out. It's simply not appropriate. This was a choice, and the stipulation makes it clear what the parties were thinking about. Defining the risks. The municipality did ascertain that this would result in inverse condemnation, and that Luxembourg was the appropriate lesson to be drawn, and the municipality did ultimately decide not to exercise that option. But that was all appropriate, and I must dispute the phraseology back out, Your Honor. The Stanleys, in essence, got what they bargained for. They got notice and an opportunity to bring suit. And if they are, in fact, intended beneficiaries, a point which the municipality has disputed in the briefing, thinking that Howell is a much more appropriate case, then they've mistaken their scope of the benefit. Thank you. Thank you, Your Honor. I can't remember if you reserved time. I didn't reserve time. My time was up. I had one comment. I have to make a brief comment. Thank you. My brief comment is regarding the intended beneficiaries of the Stanleys. The municipality, when they signed the stipulation, conferred a benefit on the Stanleys. When the plat was recorded by Carr-Gottstein, the only benefit left was to Lot 2. Certainly, the intended beneficiary was the owner of Lot 2, because that was the only benefit left after the plat was recorded. Thank you, counsel. Stanley v. Carr-Gottstein is submitted. This court is adjourned until 9 tomorrow morning. All rise. Thank you. This court for this session stands adjourned. Thank you.
judges: Hall, Kleinfeld, Wardlaw